UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JAHODA,<br><br>Plaintiff,<br><br>v.<br><br>ADIRONDACK TRANSIT LINES, INC., D/B/A ADIRONDACK TRAILWAYS, PINE HILL KINGSTON BUS CORP., D/B/A PINE HILL TRAILWAYS, PASSENGER BUS CORP., D/B/A NEW YORK TRAILWAYS,<br><br>Defendants. | Case No. 2:19-cv-00500-AJS |

## CONSENT DECREE

1. This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 11, by and between the following parties: Plaintiff, Robert Jahoda ("Plaintiff") and Defendants Adirondack Transit Lines Inc., d/b/a Adirondack Trailways, Pine Hill Kingston Bus Corp., d/b/a Pine Hill Trailways, and Passenger Bus Corp., d/b/a New York Trailways, (collectively "Defendants" or "Trailways"). (Plaintiff and Defendants shall hereinafter be collectively referred to as, the "Parties") for the purposes and on the terms specified herein.

### RECITALS

2. Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189 ("ADA") and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

1

3. On May 1, 2019, Plaintiff filed this lawsuit against Defendants. Plaintiff alleges that Defendants' website, TrailwaysNY.com (the "Website"), contains barriers that prevent full and equal use by shoppers with visual impairments, in violation of Title III of the ADA, 42 U.S.C. §§12181–12189.

4. Defendants expressly denies that the Website violates Title III of the ADA or any other comparable regulation or statute. By entry into this Consent Decree, does not admit any wrongdoing.

5. This Consent Decree resolves, settles, and compromises all issues between the Parties based on the allegations set forth in Plaintiff's Complaint [ECF No. 1].

6. This Consent Decree is entered into by the Plaintiff, individually.

## JURISDICTION

7. Plaintiff asserts that Defendants are commonly owned private entities that own and/or operate the Website which is available through the internet to personal computers, laptops, mobile devices, tablets, and other similar technology. Plaintiff contends that Defendants' Website is a sales and service establishment whose operations affect commerce and a public accommodation subject to Title III of the ADA. 42 U.S.C §12181(7); 12182(a); 28 C.F.R. §§ 36.104, 36.201(a). Defendants deny that its Website is a public accommodation or a place of public accommodation or is otherwise subject to Title III of the ADA.

8. Plaintiff is suing on his own behalf, as an aggrieved person pursuant to 42 U.SC. § 12188(b)(2)(b).

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12188. The Parties agree that venue is appropriate.

## **AGREED RESOLUTION**

10. Plaintiff and Defendants agree that it is in the Parties' best interest to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in Plaintiff's Complaint.

In resolution of this action, the Parties hereby **AGREE** to the following:

### **DEFINITIONS**

11. Effective Date means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

12. Visual Impairment means any physical, mental, or sensory impairment that substantially limits a person in the major life activity of seeing.

13. Reasonable Efforts means, with respect to a given goal or obligation, the efforts that a reasonable person or entity in Defendants' position would use to achieve that goal or obligation. Any disagreement by the Parties as to whether has used Reasonable Efforts as provided for under this Consent Decree shall be subject to the dispute resolution procedures set forth in paragraphs 24 through 34 of this Consent Decree. Reasonable Efforts shall also mean commercially reasonable efforts ("Reasonable Efforts"), and shall be further interpreted so as to not require to undertake efforts whose cost, difficulty or impact on Defendants' website-related operations, or otherwise, could constitute an undue burden, as defined in Title III of the ADA but as applied solely to Defendants' website-related operations as though they are collectively a stand-alone business entity, or which could result in a fundamental alteration in the manner in which operates its respective website-related properties or the primary functions related thereto, or which could result in a loss of revenue or traffic on its respective website-related operations.

3

## TERM

14. The term of this Consent Decree shall commence as of the Effective Date and remain in effect for the earlier of: (1) twenty-four (24) months from the Effective Date; or (b) the date, if any, that final regulations are adopted for websites under Title III of the ADA.

## GENERAL NONDISCRIMINATION REQUIREMENTS

15. Pursuant to the terms of this Consent Decree, Defendants:

   a. shall not deny persons with a Visual Impairment, including the Plaintiff, the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations through its Website as set forth herein. 42 U.S.C. §12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

   b. shall use Reasonable Efforts to provide persons with a Visual Impairment, including the Plaintiff, an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through its Website as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.202(b); and

   c. shall use Reasonable Efforts to ensure that persons with a Visual Impairment, including the Plaintiff, are not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, through its Website as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

## COMPLIANCE WITH TITLE III OF THE ADA

16. **Web Accessibility Conformance Timeline:** Defendants shall ensure full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website according to the following timeline and requirements provided that the following dates will be extended in the instance that the Department of Justice

releases regulations for websites under Title III of the ADA while this Consent Decree is in effect and which contain compliance dates and/or deadlines further in the future than the dates set forth herein:

    a.    By May 31, 2021, Defendants shall ensure that the Website substantially conforms to the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA") in such a manner so that the Website will be accessible to persons with Vision Impairments or blindness as set forth in Paragraph 26 below.

    b.    Defendants shall not be responsible for ensuring that third party content or plug-ins that are not owned by Defendants, but are otherwise located on the Website or linked to from the Website, are accessible or otherwise conform to WCAG 2.0 AA or any then-existing ADA compliance standard.

    c.    Within 120 days of the execution of this Agreement, Defendants shall (by email or by physical mail via the United States Postal Service) provide written notice to known third parties that own or manage third party content or plug-ins ("Third Party Website Content") located on the Website or linked from the Website that requests that Third Party Website Content notifying them to substantially conform to WCAG 2.0 AA in such a manner so that the Third Party Website Content will be accessible to persons with Vision Impairments or blindness as set forth in Paragraph 27 below. Notwithstanding anything set forth herein to the contrary, Defendants shall not be responsible or liable for obtaining, ensuring, managing, auditing of or other notifications in connection with Third Party Website Content ADA compliance.

17.    **Web Accessibility Coordinator:** By July 31, 2019, Defendants shall designate an employee or third party as the Web Accessibility Coordinator who shall consult with the Web Accessibility Consultant as that term is defined in Paragraph 21. Defendants may substitute

another Defendants' employee or third party as the Web Accessibility Coordinator at its sole discretion.

18. **Web Accessibility Policy:** By January 31, 2020, Defendants shall adopt and implement a Web Accessibility Policy that indicates that is making efforts to increase the accessibility of its Website. By July 31, 2020 Defendants shall:

    a. Provide a copy of the Web Accessibility Policy to all web content personnel and Client Service Operations call center agents ("CSO Personnel") for the Website;

    b. Directly link from the Website's homepages, a statement that indicates that Defendants are making efforts to maintain and increase the accessibility of Defendants' Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the through the Website; and

    c. Accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy.

19. **Customer Assistance for Users with Disabilities:** By January 31, 2020, Defendants shall train no fewer than two of their CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendants shall have trained no fewer than two (2) of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendants shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance.

20. **Modification of Bug Fix Priority Policy:** By December 31, 2021, Defendants shall modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create substantial nonconformance with WCAG 2.0 AA with regard to the Website.

21. **Web Accessibility Consultant and Evaluation:** To the extent they have not done so already, by July 31, 2019, Defendants shall retain an independent consultant ("Web Accessibility Consultant") of their own choosing, who has expertise concerning accessible web development and is knowledgeable of the terms of this Consent Decree and WCAG 2.0 AA.

    a. By December 31, 2021, and annually thereafter through the term of the Consent Decree, the Web Accessibility Consultant shall provide a written evaluation in the form of a Voluntary Product Accessibility Template ("VPAT"). The VPAT shall describe whether the Website is in conformance with the requirements of WCAG 2.0 AA and this Consent Decree. The VPAT shall not include an evaluation of Third Party Content located on the Website or linked to from the Website. Testing of the Website's usability at the direction of the Web Accessibility Consultant shall be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools.

    b. If the Plaintiff wishes to review the most recent VPAT, Plaintiff's counsel may contact Defendants' counsel, who, at Defendants' option, will send the most recent VPAT or provide access for 30 days to a secure website where the most recent VPAT may be accessed. Plaintiff agrees to keep the contents of the VPAT confidential unless its contents are required to be disclosed solely as part of an action to enforce the terms of this Consent Decree.

c.   Defendants shall incorporate all of the recommendations contained in the VPAT within (120) days of receiving the VPAT except in the instance that cannot incorporate the recommendations contained in the VPAT through the use of Reasonable Efforts.[1]

### SPECIFIC RELIEF TO PLAINTIFF

22.   **Specific Relief:** The Plaintiff and the Defendants have agreed to settle all matters relating to costs, damages, attorneys' fees, experts' fees, other financial matters, as well as Plaintiff's counsel's obligation to defend at Plaintiff's counsel's expense in any action or demand, whether filed or not, relating to any alleged inaccessibility of the Website through a separate letter agreement (the "Letter Agreement") hereby incorporated by reference into this Consent Decree. The Letter Agreement shall be provided to the Court *in camera* for inspection and review if the Court so requires in order to extend its enforcement jurisdiction over the terms of the Letter Agreement.

### PROCEDURES IN THE EVENT OF DISPUTES

23.   The procedures set forth in Paragraphs 24 through 28 must be exhausted in the event that (i) Plaintiff alleges that Defendants have failed to meet their obligations pursuant to this Consent Decree or (ii) alleges that there is a criteria of WCAG 2.0 AA with which they cannot substantially comply as set forth herein. There will be no breach of this Consent Decree by in connection with such allegations until the following procedures have been exhausted.

24.   Plaintiff will notify Defendants in writing after the dates for compliance set forth herein if they believe that the Website is in any way not compliant with this Consent Decree. Defendants will notify Plaintiff in writing within a reasonable period if they believe there is a criteria of this Consent Decree with which they cannot substantially comply hereunder. All

---

[1] shall not be required to incorporate recommendations contained in the VPAT to the extent they provide performance in excess of that set forth in Paragraph 26 of this Consent Decree.

notifications must include reasonable detail and shall be made in the manner set forth in Paragraph 35.

25. Within thirty (30) days of either Party receiving notice as described in Paragraph 24, the other Party will respond in writing to the notice. Within fifteen (15) days of receipt of the response, the Parties will meet by telephone, or in person, in an attempt to informally resolve the issue.

26. If the issue remains unresolved within thirty (30) days of the meeting referenced in Paragraph 25, the Parties will each have an additional thirty (30) days to select an expert and the two experts will mutually select an independent accessibility consultant with substantial experience in accessible website design who will evaluate the particular item(s) raised based on whether a person, who has a Visual Impairment using screen reader software and has average screen reader competency ("person with a Visual Impairment who has average screen reader competency"),[2] can adequately perform the following tasks under the circumstances described in Paragraph 27:

    a.    Browse for services by navigating through the different categories on the Website;

    b.    Purchase one or more services;

    c.    Find, review and select shipping options, if applicable;

    d.    Check out and pay;

    e.    Apply discount code, if applicable;

---

[2] The phrase "person with a Visual Impairment who has average screen reader competency" is intended to refer to the general body of persons with Vision Impairments who use screen readers for effective communication with the Internet and various websites. The term is not intended to narrowly identify someone with a particular level of competency but instead is intended to be inclusive, while ruling out "outliers" in terms of screen reading software use proficiency. Therefore, the phrase "person with a Visual Impairment who has average screen reader competency" is intended to exclude a person who has just recently started using a screen reader and has very little experience and competence using it and at the other extreme to also exclude a blind, tech savvy person with substantial experience using a screen reader while including most users in between.

  f.  Review the sale summary page;

  g.  Contact and communicate with customer service; and

  h.  Review the privacy policy.

27. There will be no breach of this Consent Decree unless (a) the independent accessibility consultant determines that the particular item(s) listed in Paragraph 26 cannot be accomplished by a person with a Visual Impairment who has average screen reader competency using a prominent commercially available screen reader such as Jaws, Voiceover, or NVDA in combination with one of the following browsers (in versions of which that are currently supported by their publishers): Internet Explorer, Firefox, Safari and Chrome; and (b) fails to remedy the issue using Reasonable Efforts within a reasonable period of time of not less than sixty (60) days of receiving the accessibility consultant's opinion. If the accessibility consultant believes that a reasonable time using Reasonable Efforts to remedy the items found not to be usable is longer than sixty (60) days, then the Parties may agree on a longer time period without leave of Court so long as the extension is documented in writing and executed by the Parties to this Agreement or their respective counsel. If the accessibility consultant finds that a particular item found not to be usable cannot be remedied using Reasonable Efforts, Defendants shall not be obligated to remedy that item.

28. Should the Parties thereafter have a dispute regarding an issue raised in a notice given under Paragraph 24 after the procedures in Paragraphs 24 through 27 have been exhausted, the dispute shall be handled pursuant to the procedures set forth in Paragraphs 29 through 33 below.

29. If a party believes that the other party hereto has not complied in all material respects with any provision of the Consent Decree, that party shall provide the other party with

notice of non-compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of the Consent Decree that is not being complied with in all material respects; (iii) a statement of the remedial action sought by the initiating party; and (iv) a reasonably detailed statement of the specific facts, circumstances and legal argument supporting the position of the initiating party.

30. Within forty-five (45) days of receipt of a notice pursuant to Paragraph 29, the non-initiating party shall respond to the initiating party in writing.

31. Within fourteen (14) days after the response described in Paragraph 30, the Parties shall informally meet and confer and attempt to resolve the issues raised in the Notice.

32. If the matters raised in a notice provided pursuant to the above are not resolved within forty-five (45) days of the initial meeting and conference required by Paragraph 31, either party may submit the unresolved matters to nonbinding mediation before a mutually agreed upon mediator.

33. If the dispute is not resolved in mediation, either party may move this Court for enforcement of compliance with this Agreement.

34. Any of the time periods set forth in Paragraphs 25 through 33 may be extended by mutual agreement of the Parties.

35. Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail and by overnight express mail or United States first class mail, addressed as follows:

To Plaintiff:

Carlson Lynch, LLP
Attn: R. Bruce Carlson, Esq.
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

Email: bcarlson@carlsonlynch.com

To Defendants:

Mandelbaum Salsburg, P.C.
Steven W. Teppler, Esq.
3 Becker Farm Road, Suite 105
Roseland, NJ 07068
Email: steppler@lawfirm.ms
Tel: 973-736-4600
Fax: 973-325-7467

AND/OR

Adirondack Transit Lines, Inc., d/b/a Adirondack Trailways
Pine Hill Kingston Bus Corp., d/b/a Pine Hill Trailways
Passenger Bus Corp., d/b/a New York Trailways
Attn: Bruce I. Kopf, Esq.
499 Hurley Avenue
Hurley, NY 12443
Email: bik@TrailwaysNY.com
Tel: 800-255-6815
Fax: 425-962-6767

## MODIFICATION

36. No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## ENFORCEMENT AND OTHER PROVISIONS

37. The interpretation and enforcement of this Consent Decree shall be governed by the laws of the Commonwealth of Pennsylvania.

38. This Consent Decree contains the entire agreement of the Plaintiff and the Defendants concerning the subject matter described in Paragraph 3, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described in Paragraph 3, shall be enforceable.

39. If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, such provision shall be deemed restated to reflect as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not, in any event, affect any other provisions, all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

### PERSONS BOUND AND INTENDED THIRD-PARTY BENEFICIARIES

40. This Consent Decree shall be binding on and insure to the benefit of: Defendants and their respective subsidiaries, successors, assigns, affiliates, agents, employees, officers. In the event that any Defendant seeks to transfer or assign all or part of its interest in its Website covered by this Consent Decree, and the successor or assign intends on carrying on the same or similar use of the Website, then the successor or assign, and not the Defendant or Defendants, shall be solely responsible for the obligations remaining under this Consent Decree for the duration of the remaining term of the Consent Decree.

41. The Parties to this Consent Decree expressly intend and agree that this Consent Decree shall inure to the benefit of all persons with a Visual Impairment who utilize a screen reader to access the Website, which visually-impaired persons shall constitute third-party beneficiaries to this Consent Decree. Such third-party beneficiaries shall be entitled to enforce the provisions of this Consent Decree against and enforce the dispute resolution provisions herein.

42. The Plaintiff and the Defendants agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in Paragraph 3. To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in

Paragraph 3, the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any party of any other obligations imposed by this Consent Decree.

43. The signatories represent that they have the authority to bind the respective parties, Robert Jahoda, and Passenger Bus Corp., Adirondack Transit Lines, Inc., and Pine Hill Kingston Bus Corp. to this Consent Decree.

## CONSENT DECREE HAS BEEN READ

44. Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

## RELEASE

45. In exchange for the good and valuable consideration set forth herein, the sufficiency of which is hereby acknowledged by the Parties, Plaintiff, his agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively, the "Releasing Parties") hereby release, acquit, satisfy, and discharge Defendants, along with any and all of its predecessors, agents, representatives, employees, partners, substitutes, replacements, successors, assigns, officers, directors, shareholders, members, subsidiaries, parents, affiliated entities, vendors, and any entity or person related to them, jointly and severally (hereinafter, the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action, in law or equity, or suits of any kind, whether known or unknown that the Releasing Parties have, may have, may have had, or may hereafter raise against the Released Parties with respect to the Website and this subject litigation arising under Title III of the ADA or any other disability-related law, ordinance, or local

rule, with respect to the time period running from the beginning of the world through the date of this Agreement, including, but not limited to, all claims by the Releasing Parties for attorney's fees and costs, expert fees, litigation expenses, damages, or any other amount, fee, and/or cost, if any, with the exception of attorneys' fees, costs, and damages required to be paid by pursuant to the Letter Agreement.

Agreed and Consented to:

_____
Robert Jahoda, Individually

Adirondack Trail Lines, Inc.

By _____
    Eugene J. Berardi Jr.

Its ___President and CEO___

Pine Hill Kingston Bus Corp.

By _____
    Eugene J. Berardi Jr.

Its ___President and CEO___

Passenger Bus Corp.

By _____
    Eugene J. Berardi Jr.

Its ___President and CEO___

**[Remainder of Page Left Intentionally Blank]**

## COURT APPROVAL, ADOPTION, AND ENTRY OF THE CONSENT DECREE

**THE COURT, HAVING CONSIDERED** the pleadings, law, underlying facts and having reviewed this proposed Consent Decree,

### FINDS AS FOLLOWS:

1) This Court has personal jurisdiction over Plaintiff and for the purposes of this lawsuit pursuant to 28 U.S.C. §§ 1331;

2) The provisions of this Consent Decree shall be binding upon the Parties;

3) Entry of this Consent Decree is in the public interest;

4) This Consent Decree is for settlement purposes only and does not constitute an admission by of any of the allegations contained in the Complaint or any other pleading in this lawsuit, nor does it constitute any finding of liability against Defendants;

5) Plaintiff is acting as a private attorney general in bringing this lawsuit and enforcing the ADA; and

6) This Consent Decree shall be deemed as adjudicating, once and for all, the merits of each and every claim, matter, and issue that was alleged, or could have been alleged by Plaintiff based on, or arising out of, or in connection with, the allegations in the Complaint.

**NOW THEREFORE,** the Court approves the Consent Decree and in doing so specifically adopts it and makes it an Order of the Court.

**DONE AND ORDERED** in Chambers at Pittsburgh, Pennsylvania, this 7th day of May, 2019.

Arthur J. Schwab
UNITED STATES DISTRICT JUDGE

cc: Counsel of record via CM/ECF

16